UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>RIVKA RABI,<br>           Defendant | Criminal No. 1:15-CR-126<br><br>Hon. Anthony J. Trenga<br><br>Sentencing Date: 8/7/15 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

Rivka Rabi ("the Defendant") served as a "drop-shipper" for SB Medical from October 2012 to December 2014. In that role, she received packages of misbranded drugs and devices at UPS boxes opened under false names, stored the products in her home, and shipped them to U.S. doctors and clinics as directed by her superiors at SB Medical's headquarters in Toronto, Canada.

The Defendant was introduced to the conspiracy through her husband, Moshe Rabi, and her brother-in-law, Shlomo Rabi, and received day-to-day instructions from SB Medical's head of sales, David Burke, and his staff. Burke was more than happy to have the Defendant bear the risk of moving millions of dollars' worth of misbranded drugs and devices through her New Jersey home, while he enjoyed the relative safety of operating from a foreign country under a false name. All the while, Burke continually reassured the Defendant she was not at risk, telling her that warning letters from the FDA were "really" not a "big issue at all." Burke and Shlomo Rabi lined their own pockets to the tune of $1.3 million and $350,000, respectively, while paying the Defendant just over $50,000.

The presentence report correctly calculated the defendant's Total Offense Level as 19, her Criminal History Category as I, and the resulting advisory Guidelines Range as 30 to 37 months' imprisonment. In addition, because the Defendant provided timely and helpful cooperation, the Government is moving for a 50% reduction in her guidelines range. Applying these two-reductions, the Defendant's revised guidelines range would be **15-19 months' imprisonment**. The Government recommends a sentence of **15 months**.

## I.  Offense of Conviction

SB Medical's mission was to smuggle non-FDA-approved prescription drugs into the United States, and distribute them to U.S. doctors and clinics. SB Medical smuggled drugs into the country by shipping them from England to "drop-shippers" in the United States. These drop-shippers would open multiple UPS and Fed Ex boxes under false names to receive the packages. They would then consolidate the drugs in their private residences and await instructions from the SB Medical sales staff. When the sales staff made sales to U.S. doctors and clinics, they would instruct the drop-shippers to fill the orders.

SB Medical's primary drop-shipper was David Stein. Beginning in 2011, Stein used the basement of his Baltimore, Maryland home as SB Medical's main warehouse. When an additional warehouse was needed in late 2011, David Burke enlisted the help of his father, Arthur, who lived in Florida. By the summer of 2012, SB Medical's operations had expanded to the point that they needed a third warehouse. That's when Shlomo Rabi, who was working as a salesman for SB

Medical, employed his brother, Moshe, who was living in New Jersey. Moshe worked as a drop-shipper for SB Medical for a few months, before turning that responsibility over to his wife, the Defendant, in October 2012. For the next two years, the Defendant would routinely retrieve packages of drugs and medical devices from UPS boxes that were opened for her under false names. The Defendant would store the drugs and devices at her house until Burke, Shlomo Rabi, or another member of the SB Medical sales staff instructed her to ship them out.

Based on interviews with the Defendant and other co-conspirators, and the review of hundreds of emails, the Government believes that the Defendant was heavily influenced by Shlomo Rabi and David Burke, both of whom were gifted salesmen and master manipulators. Several cooperating witnesses informed the Government that Burke trained his sales staff in how to mislead clients about the legality of their operation. For instance, Burke instructed his staff to respond to questions about whether the drugs were FDA-approved by stating that they were manufactured in an "FDA-approved facility," and to tell concerned customers that, while their business operated in a "grey area," it was legal if "done right." The Defendant reported that, when she expressed concern, Burke would use these same lines on her, stating, for instance, that the business was "totally legitimate if it's done the right way." PSR ¶ 24. Burke made similar assurances over email, when he told the Defendant that letters she received from the FDA informing her that

drugs addressed to her were detained were not "a big issue at all," and "don't worry happens all the time."

The Defendant was briefly asked to handle "cold-chained" products on behalf of the conspiracy. She has testified that this made her deeply uncomfortable and that she attempted to keep the products at controlled temperatures, despite being repeatedly told not to do so by David Burke. This account is corroborated by an email exchange in which Burke emailed the Defendant: "You don't put any ice in the boxes when you ship them to Baltimore right?" The Defendant responded: "The Botox I do even though it's not sent with ice packs…" Burke replied: "You do not need to put ice in anything going forward."

As stated in the Government's Motion For Downward Departure Under U.S.S.G. § 5K1.1, the Defendant began cooperating with this investigation shortly the Government executed a search warrant on her residence on December 23, 2014. On May 4, 2015, the Defendant pled guilty to a one count criminal information charging her with conspiracy to smuggle into and distribute within the United States misbranded prescription drugs and devices. This offense is a Class D felony, punishable by a maximum of five years of imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

## II.     Relative Culpability of Conspirators

In addition to the Defendant, five other SB Medical employees have entered guilty pleas and await sentencing by this Court. While the Government intends to submit individual sentencing memoranda for each defendant, we have included, for

the Court's convenience, a brief description of each defendant's role in the Conspiracy, as well as a ranking of each defendant's relative culpability, from most to least culpable. Notably, this ranking does not take into account any cooperation credit that may be recommended.

| Rank | Defendant | Sentencing | Salary | Role |
|---|---|---|---|---|
| 1 | David Burke | August 21 | $1,301,626 | Director of sales and leader of day-to-day operations. Trained sales team in how to mislead clients. Instructed drop-shippers on when and how to ship packages, including advising them to use false names and addresses, and to ship cold-chain products at room temperature. |
| 2 | Shlomo Rabi | August 21 | $356,901 | Senior member of sales team. Recruited, trained, and supervised co-conspirators such as Ibrahimian, Murlis, and R. Rabi. |
| 3 | David Stein | August 14 | $174,015 | Operated primary warehouse in Baltimore, Md. Received, stored, and shipped over $13 million in misbranded drugs and devices. Ignored requirements for safe shipment and storage of cold-chained products. |
| 4 | Asaf Ibrahimian/ Reuven Mirlis | August 14 | $173,469 (combined) | Members of SB Medical Sales staff. Engaged in deceptive practices under the direction of Burke and Sholmo Rabi. |
| 6 | Rivka Rabi | August 7 | $54,821 | Operated secondary warehouse in New Jersey. Received, stored, and shipped over $4 million in misbranded drugs and devices. |

### III. Sentencing Guidelines Calculation

The Probation Office originally calculated the Defendant's guidelines range as 46-57 months of imprisonment, based on a criminal history of I and an offense level of 23. Given the defendant's timely acceptance of responsibility, the government moves this Court for a one-level reduction under U.S.S.G. § 3E1.1(b),

which the Probation Office has appropriately included in its calculations. PSR ¶ 35. Defendant has asserted that a four-level reduction under USSG § 3B1.2 is appropriate because she was a "minimal participant." Because the defendant made a relatively small profit, did not appear to understand the full extent of the conspiracy, and was heavily influenced by David Burke and Shlomo Rabi, the Government did not object to the "minimal participant" reduction. With that reduction, the Defendant's guidelines are properly calculated as 30-37 months imprisonment, based on a total offense level of 23 and a criminal history category of I:

| Guideline | |
|---|---|
| Base Offense Level (Section 2B1.1(a)(2)) | 6 |
| Loss more than $400,000 and no more than $1,000,000 (Section 2B1.1(b)(1)(J)) | +18 |
| Offense committed outside United States/ Sophisticated Means (Section 2B1.1(b)(10)(B)&(C) | +2 |
| Minimal Role (Section 3B1.2) | -4 |
| Timely acceptance of responsibility (Section 3E1.1(a) and (b)) | -3 |
| **TOTAL** | **19** |

In addition, because the Defendant provided timely and useful cooperation, the Government moves for a 50% reduction in the guidelines range. Accordingly, the Government believes the proper guidelines calculation is **15-19 months' imprisonment**.

The Government must oppose the Defendant's remaining objections to the PSR. First, the Defendant objects to the application of a loss amount enhancement

because she claims that there is no evidence of any loss to any individual. But the Sentencing Commission has explicitly stated that where "goods for which regulatory approval by a government agency was required but not obtained, … loss shall include the amount paid for the … goods." USSG § 2B1.1, app. n.3(F)(v); *see also United States v. Goldberg*, 538 F.3d 280 (3d Cir. 2008) (rejecting argument from defendant convicted of selling misbranded drugs that no loss enhancement apply given the lack of evidence of actual loss, noting that "the way to account for [defendant's] conduct is established by § 2B1.1 cmt. 3(F)(v)"); *United States v. Caputo*, 517 F.3d 935, 943 (7th Cir. 2008) (applying Application Note 3(F)(v), and finding that the district court correctly "calculated the loss at roughly $17 million, the list price for all Plazlyte devices that AbTox delivered").

Second, the Defendant objects to the application of USSG § 2B1.1(b)(10), asserting that it is impermissible "double-counting" to apply a "substantial foreign conduct" enhancement because the crime of smuggling necessary involves foreign conduct. But smuggling was just one aim of the charged conspiracy; the others were (1) to defeat the lawful functions of the FDA; (2) to introduce into interstate commerce misbranded prescription drugs and devices; and (3) to distribute prescription drugs without a license. *See* Information ¶ 10. Each of these aims could be accomplished without foreign conduct. The defendant also objects to the PSR's finding that § 2B1.1(b)(10) would apply even absent foreign conduct because the Conspiracy involved sophisticated means. Again, she is wrong. The Conspiracy used several sophisticated means to avoid detection, including breaking up large

shipments into smaller ones, delivering drugs to multiple UPS boxes that were opened under false names, creating false invoices to appear to be an American company, and using a device called a "Magic Jack" to show a false American area code on a client's caller ID.

## IV. Application of Sentencing Factors & Recommendation

Although the Sentencing Guidelines are advisory, the Court is required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). A "district court shall first calculate … the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted). The § 3553(a) factors include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- the kinds of sentences available and the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
- any pertinent policy statement;
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- the need to provide restitution to any victims of the offense.

Here, the nature of the offense is very serious. The Defendant received, stored, and shipped over $4 million worth of misbranded prescription drugs and devices, causing grave danger to the public health. Specific deterrence is not a serious concern in this case, however, because the Defendant does not have any prior criminal history and does not appear to pose a significant risk of recidivism.

As the Government has argued in its sentencing memoranda with respect to SB Medical and TC Medical, there is a strong need to ensure that sentences imposed for distribution of misbranded pharmaceuticals are sufficient to deter the enormous profits that can be made by committing this offense. Similarly compelling is the need to ensure that sentences imposed for this crime reflect the seriousness of the offense by sending the message that misbranded pharmaceuticals are dangerous and their distribution is a serious crime. But the Government believes that message can be sent, and the necessary general deterrence provided, by imposing meaningful sentences of TC Medical Group, SB Medical Inc., and the remaining, more culpable defendants.

Accordingly, the Government recommends a sentence of **15 months' imprisonment**, the low-end of the Government's recommended guidelines range.

      Respectfully submitted,

      Dana J. Boente
      United States Attorney

By:     /s/
      Kellen S. Dwyer
      Jay V. Prabhu
      Assistant United States Attorneys
      United States Attorney's Office
      Eastern District of Virginia
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Ph: (703) 299-3700
      Fax: (703) 299-3981
      Email: kellen.dwyer@usdoj.gov

Date: July 31, 2015

## Certificate of Service

I hereby certify that on July 31, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of filing (NEF) to counsel of record for the defense.

I also certify that on July 31, 2014, I will send a true and correct copy of the foregoing by e-mail to the following:

Quentin T. Lowe
United States Probation Officer
Alexandria, VA
703/299-2334
Quentin_Lowe@vaep.uscourts.gov

By: _____/s/_____
Kellen S. Dwyer
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3707 office, (703) 299-3981 fax
kellen.dwyer@usdoj.gov